## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

| | |
|---|---|
| NOETIC SPECIALTY INSURANCE COMPANY, 14280 Park Meadow Drive, Suite 300, Chantilly, VA 20151, <br><br> Plaintiff, <br><br> v. <br><br> EGALET CORPORATION, 600 Lee Road, Suite 100, Wayne, PA 19087, <br><br> REGISTERED AGENT: The Corporation Trust Company Corporation Trust Center 1209 Orange Street Wilmington, DE 19801, <br><br> Defendant. | ) ) ) ) ) ) ) Case No. _____ ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Noetic Specialty Insurance Company ("Noetic"), by and through its attorneys, seeks entry of judgement in its favor and against Defendant, Egalet Corporation ("Egalet"), pursuant to 28 U.S.C. § 2201, et seq., and in support thereof states as follows:

## NATURE OF THE ACTION

1.  This is a declaratory judgment action, brought pursuant to 28 U.S.C. § 2201, et seq., wherein Noetic seeks a judicial determination of its rights, duties and

obligations under a certain claims-made policy of insurance issued by Noetic to Egalet, in connection with a government entity-initiated lawsuit filed by the State of Arkansas, 72 Arkansas Counties and 15 Arkansas Cities arising out of the opioid epidemic in Arkansas.

2.      Noetic issued insurance coverage to Egalet in effect from November 1, 2017 to November 1, 2018. During this time period, the government entity claimants filed their original and first amended complaints against Egalet and other Defendants, seeking recovery for various economic losses related to Arkansas' opioid epidemic.

3.      Egalet has demanded insurance coverage from Noetic in connection with the underlying government entity-initiated lawsuit that is pending against Egalet.

4.      Noetic now seeks a judicial declaration that it owes Egalet no duty to defend or indemnify in connection with the underlying government entity-initiated lawsuit. The policy of insurance at issue expressly states that any duty to defend does not extend to include lawsuits or actions initiated by government entities, such as the underlying government entity-initiated lawsuit.

5.      Because Noetic's duty to defend does not extend to government entity lawsuits, Noetic does not owe a duty to indemnify Egalet in connection with the

underlying government entity-initiated lawsuit. Accordingly, Noetic seeks a declaration that it owes no duty to defend or indemnify Egalet.

## THE PARTIES

6.      Plaintiff Noetic is an insurance company organized and incorporated under the laws of the State of Vermont, with its principal place of business located in Chantilly, Virginia.

7.      Defendant Egalet is a corporation organized and incorporated under the laws of the State of Delaware, with its principal place of business located in Wayne, Pennsylvania.

## JURISDICTION AND VENUE

8.      On May 15, 2018, Egalet tendered the underlying government entity-initiated lawsuit to Noetic, seeking a defense and indemnity under the Noetic insurance policy. (See Egalet's May 15, 2018 correspondence, a true and correct copy of which is attached hereto as "Exhibit A.")

9.      On May 18, 2018, Noetic responded to Egalet's tender, disclaiming coverage. (See Noetic's May 18, 2018 correspondence, a true and correct copy of which is attached hereto as "Exhibit B.") In its coverage disclaimer, Noetic explained that its policy expressly disclaims any duty to retain counsel to defend Egalet against government entity lawsuits, a risk outside the scope of the policy's coverage. Noetic's coverage disclaimer further explained that, absent a duty to

retain defense counsel, there is no possibility that Noetic could owe a duty to indemnify.

10.     On June 19, 2018, Egalet responded to Noetic's coverage disclaimer, asserting that "Egalet expressly disagrees with [Noetic's] conclusion that there is [*sic*] no defense and indemnity obligations owed." (See Egalet's June 19, 2018 correspondence, a true and correct copy of which is attached hereto as "Exhibit C.") Egalet took the position that, despite the policy language expressly disclaiming any duty to retain counsel to defend against lawsuits initiated by government entities, Noetic nevertheless owed a duty to defend the underlying government entity-initiated lawsuit. Egalet also took the position that, even absent a duty to defend, Noetic owes a duty to indemnify.

11.     Based on Noetic's and Egalet's present dispute concerning the scope of coverage under the insurance policy at issue, there is a real, substantial and justifiable controversy that now exists between the parties, which controversy is subject to resolution by this Court pursuant to 28 U.S.C. §§ 2201 and 2202. Therefore, Noetic seeks a judicial declaration of the parties' respective rights, duties and obligations under the insurance policy at issue.

12.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 2201. There is complete diversity of citizenship between the parties, because Noetic and Egalet are citizens of different

states, and the amount in controversy exceeds $75,000, exclusive of interest, costs and fees. Given the procedural and substantive complexity of the underlying opioid epidemic litigation, and the voluminous number of parties involved, defense costs alone are expected to exceed $75,000.

13.    Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim—*i.e.*, Noetic's decision to deny Egalet's request for a defense and indemnity in connection with the underlying government entity-initiated lawsuit—occurred in this judicial district.

## THE UNDERLYING GOVERNMENT ENTITY-INITIATED LAWSUIT

14.    On March 15, 2018, the government entity claimants filed a lawsuit concerning the opioid epidemic in Arkansas against numerous corporate entities, including Egalet, and individuals. That lawsuit is captioned *State of Arkansas, et al. v. Purdue Pharma, L.P., et al.*, No. CV-20118-268, pending in the Circuit Court of Crittenden County, State of Arkansas (the "Underlying Government Entity Lawsuit"). On March 19, 2018, the underlying government entity Plaintiffs filed a first amended complaint. (See the Underlying Government Entity Lawsuit First Amended Complaint, a true and correct copy of which is attached hereto as "Exhibit D.")

15.    The Underlying Government Entity Lawsuit First Amended Complaint names four categories of Defendants: a) opioid manufacturers; b) opioid distributors; c) opioid retailers; and d) individual and corporate physicians and an individual pharmacist who allegedly prescribed and/or distributed opioids. (Ex. D at ¶¶ 125-76 at 27-42) The Underlying Government Entity Lawsuit First Amended Complaint classifies Egalet as a "Manufacturer Defendant," although Egalet also allegedly distributed opioids:

> 155.    EGALET CORPORATION ("Egalet") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Wayne, Pennsylvania. Egalet manufactures, promotes, sells, and distributes— or at times relevant to this Complaint, manufactured,  promoted, sold, and distributed— branded and generic opioid pharmaceutical products in the United States and Arkansas.

(Ex. D at ¶ 155 at 37)

16.    The Underlying Government Entity Lawsuit First Amended Complaint alleges that the Manufacturer Defendants, including Egalet, exacerbated the opioid epidemic by engaging in fraudulent marketing of opioid pharmaceutical products, and spread false and deceptive statements about the risks and benefits of long-term opioid use. A sampling of such allegations includes the following:

> 17.    Defendants' conduct has foreseeably exacted a financial burden on Arkansas citizens, including Plaintiffs. Plaintiffs have unnecessarily and

6

jointly spent, and will continue to spend, considerable funds on costs directly attributable to the flood of opioids that Defendants unleashed upon the State, the Counties, the Cities and their citizens.

****

181.  To take advantage of the lucrative market for chronic pain patients, each Manufacturer Defendant developed a well-funded marketing scheme based on deception. Each Manufacturer Defendant used both direct marketing and unbranded advertising disseminated by seemingly independent third parties to spread false and deceptive statements about the risks and benefits of long-term opioid use—statements that benefited not only themselves and the third-parties who gained legitimacy when Manufacturer Defendants repeated those statements, but also other opioid manufacturers. These statements were contrary to the scientific evidence and targeted susceptible prescribers and vulnerable patient populations.

****

192.  Manufacturer Defendants also deceptively marketed opioids in Arkansas through unbranded advertising—i.e., advertising that promotes opioid use generally but does not name a specific opioid. …

(Ex. D at ¶¶ 17, 181, 192 at 9, 45, 48)

17.     The  Underlying  Government  Entity  Lawsuit  First  Amended Complaint also alleges that all Defendants, including Egalet, committed the following wrongful acts:

7

a. consciously oversupplying the market throughout the State with highly-addictive prescription opioids;

b. using unsafe distribution and dispensing practices;

c. disregarding the Arkansas statutes and regulations for safe dispensing;

d. affirmatively enhancing the risk of harm from prescription opioids by failing to act as a last line of defense against diversion;

e. inviting and enabling criminal activity in the State, counties, and cities by disregarding precautionary measures built into Arkansas law;

f. failing to properly train or investigate their employees;

g. failing to properly review controlled substance orders for red flags;

h. failing to establish effective controls to combat diversion of opioids;

i. failing to police the integrity of their supply chains;

j. knowingly writing illegitimate opioid prescriptions to feed addiction; and

k. knowingly writing illegitimate opioid prescriptions for diversion to the illicit market.

(Ex. D at ¶ 387 at 108-09)

18. The Underlying Government Entity Lawsuit First Amended Complaint asserts nine causes of action, based on the foregoing allegations of fact, for which all Defendants are allegedly jointly and severally liable:

**Count I**    Negligence/Gross Negligence

8

| | |
|---|---|
| **Count II** | Common Law Public Nuisance |
| **Count III** | Violations of the Arkansas Uniform Narcotic Drug Act |
| **Count IV** | Accomplice to Violations of the Arkansas Uniform Narcotic Drug Act |
| **Count V** | Civil Conspiracy to Violate the Arkansas Uniform Narcotic Drug Act |
| **Count VI** | Possessing, Delivering, Manufacturing and Trafficking Controlled Substances in Violation of the Arkansas Controlled Substances Act |
| **Count VII** | Accomplice to Violations of the Arkansas Controlled Substances Act |
| **Count VIII** | Civil Conspiracy to Violate the Arkansas Controlled Substances Act |
| **Count IX** | Violations of the Arkansas Drug Dealer Liability Act |

(Ex. D at ¶¶ 374-494  at 105-28)

19.     The Underlying Government Entity Lawsuit First Amended Complaint seeks to recover expenses associated with extraordinary and additional services to combat the opioid epidemic. (Ex. D at 129-30) Such expenses include enhanced costs for emergency services, law enforcement, incarceration, court administration, addiction treatment, healthcare, child services and rehabilitation services. The Underlying Government Entity Lawsuit First Amended Complaint

also seeks expenses for economic blight, such as diminished property values, lost tax revenue and decreased work force productivity. Additionally, the Underlying Government Entity Lawsuit First Amended Complaint seeks attorneys' fees and costs, pre- and post-judgment interest and punitive and treble damages. (Ex. D at 130)

## THE NOETIC POLICY ISSUED TO EGALET

20.     Noetic issued Egalet a claims-made Products/Completed Operations Liability Policy, No. N17PA380019, for the policy period November 1, 2017 to November 1, 2018 (the "Noetic Policy"). The Noetic Policy provides Products/Completed Operations Liability coverage with limits of $10,000,000 per occurrence, which limits are eroded by defense expenses. (See the Noetic Policy, a true and correct copy of which is attached hereto as "Exhibit E," with premium information redacted.)

21.     In connection with issuance of the Noetic Policy, Egalet was represented by Marsh U.S.A. Inc., one of the world's largest insurance brokers.

22.     The Noetic Policy provides, in relevant part, as follows:

**Section I—COVERAGES**

**A. PRODUCTS/COMPLETED OPERATIONS
    BODILY INJURY AND PROPERTY DAMAGE
    LIABILITY**

**1.  Insuring Agreement**

**a.** We will pay those sums, in excess of the **Deductible**, that the **Insured** becomes legally obligated to pay as **Damages** because **Bodily Injury** or **Property Damage** to which this insurance applies. This insurance applies only if:

**(1)** the **Bodily Injury** or **Property Damage** is included within the **Products/Completed Operations Hazard**;

**(2)** the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place in the **Coverage Territory**;

**(3)** the **Bodily Injury** or **Property Damage** did not occur before the **Retroactive Date**, if any, shown in the Declarations or after the end of the policy period, provided that, any **Bodily Injury** or **Property Damage** that commences before the **Retroactive Date** and continues after the **Retroactive Date** will be deemed to have occurred before the **Retroactive Date**;

**(4)** a **Claim** because of **Bodily Injury** or **Property Damage** is first made against any **Insured** during the policy period or any Extended Reporting Period and is reported to us as soon as reasonably possible; and

**(5)** the **Claim** did not arise out of a **Serious Adverse Event** that any **Insured** knew about prior to the effective date of this policy, but did not report to us or another insurer

> prior to such effective date, or disclose on the Application for this insurance.

****

**3. Defense Expenses**

    **a.**     We will have the right and duty to defend the **Insured** against any **Claim** for **Bodily Injury** or **Property Damage** to which this insurance applies and to control the defense. For any **Claim** that is not a **Suit**, the duty to defend does not require us to retain counsel.

    **b.**     We will pay **Defense Expenses** with respect to any **Claim** that we defend. These payments will contribute to the exhaustion of the **Deductible** and, upon exhaustion, will then reduce the limits of insurance.

****

(Ex. E at 1-2 of 19)

23.    The Noetic Policy contains the following relevant definitions:

**Section VII—DEFINITIONS**

****

**3. Bodily Injury** means:

    **a.**     Physical harm, sickness, or disease sustained by a person, including death resulting from any of these at any time; and

    **b.**     Any mental anguish, mental injury, disability, shock, fright or humiliation sustained by that person or by any relative of that person as a result of such physical harm, sickness, disease, or death.

12

4. **Claim** means:

    **a.**    Written notice received by any **Insured**, from any party, demanding money, services, or other compensation resulting from an **Occurrence** or stating that it is the intention of such party to hold any **Insured** responsible for an **Occurrence**; or

    **b.**    a **Suit**.

****

12. **Damages**

    **a.**    Means money:

        **(1)**    awarded in a **Suit**; or

        **(2)**    the payment of which an **Insured** is obligated to make under a binding **Settlement**; ….

****

    **d.**    **Damages** does not include:

        **(1)**    fines or penalties imposed by law, regulation, or regulatory authority;

        **(2)**    taxes; or

        **(3)**    the return or restitution of fees, profits or charges for **Your Work** or **Your Product**; or

        **(4)**    fines, penalties or monies demanded by or awarded to a government in an action to recover its costs for health care and treatment.

****

43. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13

\*\*\*\*

49.**Property Damage** means:

**a.**   physical injury to tangible property other than **Your Product** or **Your Work**; or

**b.**   loss of use of tangible property, other than **Your Product** or **Your Work** that:

**(1)**   has been physically injured; or

**(2)**   incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property cannot be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.

For the purposes of this insurance, **Electronic Data** is not tangible property.

\*\*\*\*

58.**Suit** means a civil proceeding in which **Bodily Injury** or **Property Damage** to which this insurance applies are alleged.

\*\*\*\*

**b.**   **Suit** does not include any action initiated by a government entity with the exception of **Coroner's Inquests**.

\*\*\*\*

## PRODUCTS/COMPLETED OPERATIONS LIABLITY COVERAGE FORM

\*\*\*\*

**E.**   **The definition for Defense Expenses found in the Definitions section is deleted in its entirety and replaced with:**

14

> **Defense Expenses** means the reasonable and necessary costs and expenses of investigation, adjustment, appraisal, defense and appeal paid or incurred by the **Insured** or by us in respect of a **Claim** or **Suit**.

****

(Ex. E at 13-15, 17-18 of 19, Products/Completed Operations Liability

Coverage Form Endorsement at 1 of 2)

## <u>COUNT I: DECLARATORY JUDGMENT</u>

### Noetic Owes No Duty to Defend Or Indemnify Egalet in Connection with the Underlying Government Entity Lawsuit

24.    Noetic repeats and incorporates by reference herein the allegations of Paragraphs 1-23 of this Complaint, as if set forth fully herein.

25.    The Noetic Policy expressly disclaims any duty to defend Egalet against a "**Claim** that is not a **Suit**," within the defined meanings of the Noetic Policy.

26.    The Noetic Policy's "Suit" definition expressly does not include "any action initiated by a government entity."

27.    The Underlying Government Entity Lawsuit was initiated entirely by Arkansas government entities.

28.    The Underlying Government Entity Lawsuit is not a "Suit," within the meaning of the Noetic Policy.

29.     Therefore, Noetic owes no duty to defend Egalet against the Underlying Government Entity Lawsuit.

30.     Therefore, Noetic likewise owes no duty to indemnify Egalet in connection with the Underlying Government Entity Lawsuit.

31.     To the extent Egalet pays any damages as a result of the Underlying Government Entity Lawsuit and the issue of Noetic's duty to indemnify such damages survives the insurance coverage issues raised herein, certain types or categories of damages may fall outside the Noetic Policy's scope of coverage or may be excluded, based on additional provisions of the Noetic Policy. Whether there is coverage for such damages is not presently at issue, and may never become an issue, as Egalet may have no liability for the conduct alleged in the Underlying Government Entity Lawsuit. If that issue eventually materializes, Noetic reserves its rights to raise additional defenses to coverage under the Noetic Policy for any damages Egalet may pay as a result of the Underlying Government Entity Lawsuit.

## **<u>REQUEST FOR RELIEF</u>**

WHEREFORE, Noetic respectfully requests that this Court:

(1)     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Noetic policy and the Underlying Government Entity Lawsuit;

16

(2)     Find and declare that Noetic Specialty Insurance Company has no defense or indemnity obligation under the policy for the claims asserted in the Underlying Government Entity Lawsuit; and

(3)     Grant such other and further relief as the Court deems just and proper.

DATED this 20th day of July 2018.               Respectfully submitted,


                                                  /s/ Kelly M. Lippincott
                                                Kelly M. Lippincott (#66648)
                                                CARR MALONEY P.C.
                                                2020 K Street, NW, Suite 850
                                                Washington, DC 20006
                                                202.310.5500 (Telephone)
                                                202.310.5555 (Facsimile)
                                                kml@carrmaloney.com

                                                Adam H. Fleischer
                                                (application for *pro hac vice*
                                                admission pending)
                                                BATESCAREY LLP
                                                191 North Wacker, Suite 2400
                                                Chicago, IL 60606
                                                312.762.3100 (Telephone)
                                                312.762.3200 (Facsimile)
                                                afleischer@batescarey.com

                                                *Attorneys for Plaintiff Noetic*
                                                *Specialty Insurance Company*

1996494